UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ALDO VICENTE FONTICIELLA | CIVIL ACTION NO. 3:17-CV-01549 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| STEEL GANG QUARTER HORSES LLC, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

This action arises from an agreement between the parties concerning the board, training, and sale of certain horses. Pending here is an omnibus motion in limine filed by Plaintiff Dr. Aldo Vicente Fonticiella ("Fonticiella") [Doc. No. 32]. Defendants Kaitlen Powell, Justin Powell, and Steel Gang Quarter Horses, LLC ("Steel Gang") (collectively "Defendants") have filed an opposition [Doc. No. 34].

For the following reasons, Fonticiella's motion is GRANTED IN PART and DENIED IN PART.

I.  FACTS AND PROCEDURAL HISTORY

Fonticiella contends that he came to an agreement with Defendants in late August/early September 2017 with respect to a number of his horses. Under that agreement, Defendants were to board and care for all of the horses. Defendants were also permitted to attempt to sell three of Fonticiella's horses at specific horse sales on his behalf.

Fonticiella further contends that, instead of fulfilling the terms of their agreement, Defendants went far outside of the authority that Fonticiella gave them under their agreement.

He alleges that Defendants had one of the horses (known as Yellow Beard or Toby) castrated by Dr. Debbie Guillory, a veterinarian in Vidalia, Louisiana, without consulting him; that Defendants then transferred a number of Fonticiella's horses to third persons without Fonticiella's approval for amounts that were far less than their fair market value; that Defendants did not return the horses in question despite Fonticiella's demand for the return of these horses; that Defendants have not given Fonticiella the proceeds of the sales of any of the horses; and that Defendants' actions with respect to these horses constituted conversion.

Fonticiella seeks damages, the return of his remaining horses, specific performance, and/or a declaratory judgment.

Defendants deny these allegations. Additionally, they filed a counter-claim against Fonticiella alleging the non-payment of invoices for the training and board of some of Fonticiella's horses, as well as for the sale, consignment/removing horses from sales, veterinarian bills for the horses, expenses for registration with AQHA, photography expenses, and damages.

Fonticiella presents four (4) subparts in his motion in limine for the Court's consideration. The Court will consider each in turn.

## II. Applicable Law and Analysis

### A. Applicable Law

#### 1. Motions in Limine

A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors'

minds. *Mathis v. Pinnacle Entm't, Inc.,* CIV.A. 11-2199, 2014 WL 2880217, at *5 (W.D.La. June 23, 2014) (quoting *Bocalbos v. Nat'l W. Life Ins. Co*., 162 F.3d 379 (5th Cir. 1998)).

## 2. Relevancy Under the Federal Rules of Evidence

The essential prerequisite of admissibility is relevance. *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (Citing FED. R. EVID. 402). Rule 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. FED. R. EVID. 401. Evidence which is not relevant is not admissible. FED. R. EVID. 402. Implicit in the above definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action. *Hall*, 653 F.2d at 1005. Whether a proposition is of consequence to the determination of the action is a question that is governed by the substantive law. Simply stated, the proposition to be proved must be part of the hypothesis governing the case a matter that is in issue, or probative of a matter that is in issue, in the litigation. *Id*.

Moreover, pursuant to Rule 403 of the Federal Rules of Evidence, the Court may exclude evidence that satisfies the above requirements for relevancy "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403, 1972 Advisory Committee Note.

B.   **Analysis**

1.   **Fonticiella's ex-wife Caroline Townsend Powell**

Defendants' Witness List identifies Fonticiella's ex-wife Caroline Townsend Powell ("Ms. Powell") as a witness with regard to the business relationship between Fonticiella and Defendants. Fonticiella seeks to exclude any testimony by or mention of his ex-wife under Federal Rule of Evidence 403 because he asserts the probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence. He argues that there is no need for Ms. Powell to testify in this case regarding the business relationship between Defendants and himself because the individual Defendants Kaitlen and Justin Powell, along with several other witnesses on Defendants' Witness List, are well aware of the business relationship between Defendants and Fonticiella. Thus, they can testify as to the nature of that relationship, his ex-wife's testimony would be needlessly cumulative.

Fonticiella additionally asserts that any testimony by Ms. Powell would carry with it a substantial danger of unfair prejudice, confusion of the issues, and misleading the jury; that his current marital status and past marriage to Ms. Powell have nothing to do with the issues in this case; that the fact that he is divorced has nothing to do with the issues in this case; and that the mere fact that the jury would be informed through the testimony of Ms. Powell that Fonticiella is divorced—which would be inherent to providing the foundation for her personal knowledge of any information that might be relevant—carries a risk of unfair prejudice, as certain jurors might hold the fact that Fonticiella is divorced against him.

Fonticiella concludes that any details that might be elicited during the testimony of Ms. Powell regarding her marriage to or divorce from Fonticiella would be either completely irrelevant

or, even if relevant in some way, substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

Defendants, on the other hand, contend that Ms. Powell has important and relevant information which could, and should, be allowed to be presented. Ms. Powell was in fact married to Fonticiella; she was present when Fonticiella began the relationship with the Defendants in 2014; and Ms. Powell can show the court how the relationship between the parties began and the nature and particulars of the agreements made.

Defendants further contend that, when Defendants began the relationship with Fonticiella, he entrusted Kaitlen Powell and Justin Powell with the care, training, selling, and breeding of the horses as well authorizing Defendants to make business decisions on his behalf. Ms. Powell acted as Fonticiella's agent in communicating with Defendants regarding the horses in Defendants' possession at that time. Defendants also note that the relationship between Fonticiella and Defendants up until the summer of 2017, is extremely relevant to the matter before the Court. Had there been no relationship prior to the summer of 2017, and one that both sides were content with, the events as occurred beginning in the summer of 2017, would not have transpired.

The Court finds that the relevance of Ms. Powell's testimony, particularly as to the inception and development of the business relationship between the parties, is not substantially outweighed by the danger of any unfair prejudice to Fonticiella, such as might occur if the jury learns he is divorced.

Accordingly, Subpart (1) to Fonticiella's motion in limine is DENIED.

## 2. Fonticiella's Possible Internal Revenue Service Issues

Fonticiella seeks to exclude any mention of any Internal Revenue Service ("IRS) issues that he may have had under Federal Rules of Evidence 402 and/or 403.

Defendants contend that, in August 2017, Fonticiella stated that he could not pay certain invoices for the care of his horses due to the fact that he was being audited by the IRS. According to Defendants, Fonticiella stated that certain of his accounts were frozen as a result of this audit and that he could not pay these invoices at that time as a result.

Fonticiella argues that any testimony regarding an audit of himself, the freezing of any accounts by the IRS, or any other mention of any difficulties that he allegedly had with the IRS should be excluded under Federal Rule of Evidence 402 because it has no relevance to the elements of the claims and defenses in this case. Alternatively, he argues such evidence should be excluded under Federal Rule of Evidence 403 because the probative value of such evidence, if any, is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

Fonticiella asserts that, even in cases involving tax matters, federal courts have excluded evidence regarding previous dealings with the IRS because of the risk of confusion of the issues and misleading the jury. *See Manko v. United States*, 63 Fed. App'x. 570, 572-73 (2nd Cir. 2003) (even though defendants in criminal trial for tax fraud had come to previous tax settlements with the IRS and those tax settlements might be relevant, the district court did not err by excluding the settlements under Federal Rule of Evidence 403 because admitting them would involve "delv[ing] into the morass" of the defendants' negotiations with the IRS and "into the IRS's complex policies of settlement and enforcement").

Fonticiella states that the only relevant fact for Defendants' counterclaim for unpaid invoices is whether these invoices were paid or not—not *why* they were not paid. His argument is that Defendants would suffer no prejudice on their counterclaim if evidence of any IRS issues Fonticiella may have had is excluded, because such evidence has no probative value. By contrast,

6

there is a strong chance that Fonticiella would suffer undue prejudice if such evidence were submitted, and there is a strong chance of confusing the issues or misleading the jury by such evidence. Furthermore, Fonticiella would need to introduce other evidence regarding any issues with the IRS that he might have had to attempt to lessen the undue prejudice he would suffer from the introduction of such evidence. This process would waste a significant amount of trial time and "delve into the morass" of tax matters that are wholly unrelated to the material facts of this matter.

Fonticiella concludes that, under Federal Rule of Evidence 402, this evidence should be excluded because it has no relevance to the elements of any of the claims or defenses at issue in this case. Alternatively, under Federal Rule of Evidence 403, the risks of undue prejudice, confusing the issues, and misleading the jury posed by this evidence substantially outweigh its probative value, if any, and evidence of any IRS issues that Fonticiella may have had should be excluded.

Defendants respond that excluding any testimony regarding Plaintiff's alleged problems with the IRS would greatly prejudice Defendants. They state the situation currently existing between Fonticiella and Defendants is solely due to the fact that Fonticiella did not pay his invoices to Defendants. The excuse provided to Defendants for his failure to pay his invoices was a direct result of Fonticiella's accounts being frozen by the IRS. Fonticiella informed Defendants of his IRS woes and asked for their help; Defendants only entered into Fonticiella's proposed offer of payment because Defendants felt sorry for Fonticiella and his situation, according to Defendants.

Defendants assert Fonticiella approached them about working out an arrangement that would have Fonticiella releasing ownership of some of the horses he owned in exchange for the amount owed to Defendants. Defendants entertained the arrangement with Fonticiella due to their long-standing business relationship. When two months passed without Fonticiella paying his

invoices, Defendants were informed it was due to the IRS audit which Fonticiella was involved in and the fact that the IRS had frozen his bank accounts. Additionally, Fonticiella expressed that he wanted to sell some of his horses to recover some of the expenses he had been out with regard to the horses.

Defendants conclude that, to state that Fonticiella's issues with the IRS has no value to the trial of this case is simply unfounded. In fact, without Fonticiella informing Defendants that the IRS had frozen his accounts and he was experiencing financial difficulty, Defendants assert they would have never agreed to the agreement proposed by Fonticiella.

The Court does not believe it is feasible to eliminate all references to Fonticiella's alleged IRS issues. The Court believes a limiting instruction is sufficient to cure any prejudice such evidence may create. The parties and the Court will address this issue prior to trial.

Accordingly, Subpart (2) to Fonticiella's motion in limine is DENIED.

### 3. Chassity Nobles

Fonticiella seeks to exclude any mention of a purported request by Fonticiella to get Fonticiella in touch with a woman named Chassity Nobles ("Ms. Nobles") for a potential dating relationship under Federal Rules of Evidence 402 and/or 403.

Fonticiella asserts that in the deposition of Will Emfinger ("Enfinger"), a Steel Gang officer, he stated that in one interaction between himself and Fonticiella, Fonticiella asked Emfinger to get him in touch with Ms. Nobles for a potential dating relationship; and, that Emfinger admitted that he was not sure whether Fonticiella ever even contacted Ms. Nobles and that he had no personal knowledge of whether Fonticiella did so or not.

Fonticiella contends that Ms. Nobles, and Fonticiella's purported request to Emfinger to help Fonticiella get in touch with her, have nothing to do with the issues in this case. He argues

that any mention of Ms. Nobles or this purported request by Fonticiella should be excluded under Federal Rule of Evidence 402 because it has no relevance to this case at all. Alternatively, any mention of Ms. Nobles or this purported request by Fonticiella should be excluded under Federal Rule of Evidence 403 because the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time substantially outweighs the probative value, if any, of this evidence.

Defendants reply that Ms. Nobles is the best friend of Defendant Kaitlen Powell. Kaitlen and Ms. Nobles have been friends for many years. Ms. Nobles was aware of and has first-hand knowledge of the relationship between Fonticiella and Defendants and the services rendered. In addition, it was Fonticiella that inquired as to information regarding Ms. Nobles from Defendants. Ms. Nobles can provide testimony to confirm the relationship that existed between Fonticiella and Defendants, which included friendship and business, as well as the fact that Fonticiella directed and authorized Defendants to act on his behalf for many years prior to the events which give rise to the matter before the Court. Defendants conclude that to exclude testimony from Ms. Nobles would be prejudicial to Defendants.

It is not clear to the Court whether Fonticiella is seeking to have Ms. Nobles totally excluded as a witness, or whether he is seeking to exclude only any mention of a purported request by Fonticiella to get Fonticiella in touch with Ms. Nobles for a potential dating relationship.

The Court finds that Ms. Nobles should not be totally excluded as witness, since her testimony may be relevant to the issues before the jury. However, the Court will exclude any testimony as to a purported request by Fonticiella to get Fonticiella in touch with Ms. Nobles for a potential dating relationship, unless at trial this testimony becomes relevant.

Accordingly, Subpart (3) to Fonticiella's motion in limine is DENIED IN PART and GRANTED IN PART. To the extent Fonticiella seeks to have Ms. Nobles totally excluded as a witness, the motion is DENIED. To the extent Fonticiella seeks to exclude any testimony as to a purported request by Fonticiella to get Fonticiella in touch with Ms. Nobles for a potential dating relationship, the motion is GRANTED, unless at trial this testimony becomes relevant.

### 4. Defendants' Experts

Fonticiella seeks to exclude any testimony by Quay Eaves, Davis & Delahoussaye Equine Appraisal, Joanie Cowden, or any other person regarding the value or worth of the horses at issue in this case because of Defendants' alleged failure to comply with the deadlines in the Court's scheduling order related to experts. Fonticiella contends that Defendants did not produce any expert reports until July 9, 2019, about six weeks after the May 24, 2019 deadline for producing such reports and almost two weeks after the June 26, 2019 expert deposition deadline. He also contends that he was not informed of the fact that Defendants had a new proposed expert equine appraiser until June 24, 2019, two days before the June 26, 2019 deadline for deposing such experts.

Defendants respond that Fonticiella has not been prejudiced by any missed deadlines, as he has had their expert report since July 9, 2019, some four months prior to trial. Defendants further indicate that Fonticiella only recently provided them notice that he intends to take the video deposition of his expert, Dr. Johnson, who resides in Phoenix, Arizona, months after the deadline for deposing experts, June 26, 2019, has passed. Defendants argue that this is grossly prejudicial to their case.

The parties have jointly moved to vacate the original scheduling order in this case and to extend discovery completion deadlines twice, and the Court granted those requests. Under the

circumstances of this case, the Court does not find sufficient grounds to exclude Defendants' expert witness.

Accordingly, Subpart (4) to Fonticiella's motion in limine is DENIED.

### III. Conclusion

Accordingly, for these foregoing reasons, Fonticiella's Omnibus Motion in Limine [Doc. No. 32] is **GRANTED IN PART** and **DENIED IN PART**.

MONROE, LOUISIANA, this 9th day of October, 2019.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**